JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:22-cv-02015-MCS-RAO | Date | May 8, 2023 |
| Title | *Ningbo Futai Elec. Ltd. v. QVC, Inc.* | | |

Present: The Honorable  Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER RE: DEFENDANT'S MOTION TO TRANSFER AND MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NOS. 28, 29)

Defendant QVC, Inc. moves to transfer this action to the United States District Court for the Eastern District of Pennsylvania ("EDPA"). (Notice of MTT, ECF No. 28.) Plaintiff Ningbo Futai Electric Limited failed to file an opposition brief. Also before the Court is a fully briefed motion for judgment on the pleadings. (MJOP, ECF No. 29-1; Opp'n, ECF No. 38; Reply, ECF No. 40.) At the hearing on April 17, 2023, the Court afforded Plaintiff an opportunity to be heard on the motion to transfer and took both motions under submission. (Mins., ECF No. 41.)

I.  BACKGROUND

Plaintiff is a Chinese company with its principal place of business in Ningbo, China, and Defendant is a Delaware corporation with its principal place of business in West Chester, Pennsylvania. (Compl. ¶¶ 2, 4, ECF No. 1.) Plaintiff asserts it owns U.S. Patent No. 10,571,104 ("Portable Lamp and Manufacturing Method Thereof") and U.S. Design Patent Nos. D880,743 ("Work Light") and D880,036 ("Working Lamp"). (*Id.* ¶¶ 1, 8–10.) Plaintiff accuses Defendant of infringing its patents through sales of Bell & Howell Work Light 360 Portable Folding Lights and Bell &

Howell Portable Work Lights. (*Id.* ¶¶ 11, 14–19.) Plaintiff brings a count of infringement as to each patent. (*Id.* ¶¶ 20–34.)

## II. LEGAL STANDARD

Only the standard for transfer under 28 U.S.C. § 1404(a) need be recited here. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "[T]he purpose of the section is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . ." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (ellipsis in original) (internal quotation marks omitted). Courts employ a two-step analysis to determine whether transfer is appropriate. First, courts consider whether the case could have been brought in the proposed transferee forum. Second, courts consider whether transfer would be convenient and fair. *See Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1093 (N.D. Cal. 2013). In a patent case, the law of the Federal Circuit governs the first inquiry, and regional circuit law governs the second. *See In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017) (applying Federal Circuit law on propriety of venue under patent venue statute); *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (applying regional circuit law on convenience factors).

Venue in a patent case is proper only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *see also TC Heartland, LLC v. Kraft Foods Grp. Brands, LLC*, 581 U.S. 258, 266 (2017) (reaffirming that "§ 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions" (internal quotation marks omitted)).

In the Ninth Circuit, a motion to transfer for convenience and justice lies within the discretion of the district court and depends on the facts of each case. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). A court must consider both public factors, which go to the interests of justice, and private factors, which go to the convenience of the parties and witnesses. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Such factors may include: (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the parties' respective contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of

litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any. *Jones*, 211 F.3d at 498–99.

### III. DISCUSSION

The Court deems Plaintiff's failure to file a written opposition brief as its consent to the granting of the motion. C.D. Cal. R. 7-12. The Court also grants the motion on its merits.

#### A. Proper Venue

Venue is proper in the EDPA under the second clause of § 1400(b). Defendant proffers that its headquarters and principal place of business is located in West Chester, Chester County, Pennsylvania, where about 1,800 of its employees work. (Bradley Decl. ¶¶ 4–6, ECF No. 30; *accord* Compl. ¶ 4.) From this evidence, Defendant establishes it has a regular and established place of business within the EDPA. *See In re Cray*, 871 F.3d at 1360 ("(1) [T]here must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."); 28 U.S.C. § 118(a) (establishing territorial jurisdiction of the EDPA, which encompasses Chester County). While Defendant fails to brief whether any of the acts of infringement occurred in in the EDPA, (*see* MTT 4–6), the allegations of the Complaint and the evidence presented with the motion suggest that Defendant directed the sale of the accused products from its headquarters in the EDPA, (*see* Bradley Decl. ¶¶ 15–17 (stating that documents about and personnel with knowledge of marketing and sale of accused products are located in West Chester); Compl. ¶¶ 22, 27, 32 (alleging Defendant committed infringement by offering accused products for sale)). Moreover, Plaintiff admitted at the hearing that it could have brought this case in the EDPA, which the Court understands as conceding that acts of infringement occurred in that district. Accordingly, the Court concludes that venue is proper in the EDPA.

#### B. Convenience and Justice Factors

##### 1. Plaintiff's Choice of Forum

Usually, a plaintiff's choice of forum is accorded substantial weight that a defendant seeking transfer must overcome with "a strong showing of

inconvenience." *Decker*, 805 F.2d at 843. Here, however, Plaintiff's choice of forum is owed little deference because it is a foreign entity with no demonstrated ties to California and an inventor who resides in China. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981); (*see, e.g.*, Compl. Ex. A, ECF No. 1-1 (naming Fujin Qiu of Ningbo, China as inventor)). This factor weighs only minimally against transfer. *Cf. Ossur HF v. iWalk, Inc.*, No. SACV 11-1759-JST (MLGx), 2012 U.S. Dist. LEXIS 200663, at *3–5 (C.D. Cal. June 12, 2012) (giving choice of forum only "some . . . deference" where plaintiff was a foreign corporation and all but one of the patent inventors resided abroad).

### 2. The Parties' Contacts

Defendant's contacts with the EDPA are significant and weigh in favor of transfer. Defendant is headquartered in the EDPA and has a principal place of business there. About 1800 of its employees "work in or around" West Chester. (Bradley Decl. ¶¶ 5–6.) The personnel with knowledge of the procurement, marketing, and sales of the accused products are in Pennsylvania. (*Id.* ¶¶ 13, 15–16.) Defendant named several potential Pennsylvania-based witnesses at the hearing. Documents pertaining to the accused products, and personnel with knowledge of Defendant's document retention policies, are in Pennsylvania. (*Id.* ¶¶ 17–18.) Defendant's contacts with this district are significantly weaker in comparison: it operates distribution centers in the district whose personnel are not likely to have knowledge pertinent to this action. (*See id.* ¶¶ 19–21.) Only a small fraction of sales of the accused products occurred in California. (*Id.* ¶ 22.)

Plaintiff, on the other hand, has identified few if any meaningful contacts with the EDPA or this district, and Defendant proffers that Plaintiff has none of note. (*See* Mot. 8.) Of course, Plaintiff's counsel is based in this district, but "the location of plaintiff's counsel is not an appropriate factor for the Court to consider when deciding a motion to transfer." *Wilson v. Walgreen Co.*, No. C-11-2930 EMC, 2011 U.S. Dist. LEXIS 103929, at *14–15 (N.D. Cal. Sept. 14, 2011) (internal quotation marks omitted) (collecting cases).

At the hearing, Plaintiff proffered that the patent prosecutor resides in this district, and Defendant signaled its intent to depose that individual. Accepting these

assertions,[1] this single contact with this district does not significantly impact the transfer analysis.

### 3. Witnesses, Evidence, and Cost of Litigation

As persuasively summarized by another court in this district,
> in patent infringement actions, the preferred forum is that which is the center of gravity of the accused activity. The district court ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production. This location is often where the development, research, and marketing of the accused product occurred. This makes sense because in determining whether infringement has been established, the principal target of inquiry is the design and construction of the accused product. The trier of fact will be asked to compare the claims in the patent with the accused product—examining its development, its components, its construction, and how it functions.

*Signal IP, Inc. v. Ford Motor Co.*, No. LA CV 14-03106 JAK (JEMx), 2014 U.S. Dist. LEXIS 139357, at *8–9 (C.D. Cal. Sept. 25, 2014) (cleaned up).

As discussed, Defendant submits that the documents and personnel with knowledge relevant to this action are in or around West Chester, Pennsylvania. (Bradley Decl. ¶¶ 13, 15–18.) Defendant also proffers that it procured the accused products from a third-party vendor based in New York City, (*id.* ¶¶ 12, 14), which is within 100 miles of the Philadelphia courthouse where most of the EDPA's trial judges sit, (Mot. 11); *see* 28 U.S.C. § 118(a). Thus, nonparty witnesses are more likely to be subject to subpoena in the proposed transferee court than in this district. *See* Fed. R. Civ. P. 45(c)(1)(A).

The Court assumes that at least some witnesses and evidence will come from China given that Plaintiff is a Chinese business entity and the inventor of the patents-

---

[1] The patent prosecutor, Raymond Y. Chan, (*e.g.*, Compl. Ex. A, at 1), maintains a San Francisco address with the California State Bar, suggesting he conducts business primarily from the Northern District of California, *see Raymond Y Chan # 206873*, *St. Bar Cal.*, https://apps.calbar.ca.gov/attorney/Licensee/Detail/206873 (last visited May 5, 2023).

in-suit is from China. (*See, e.g.*, Compl. ¶ 2 & Ex. A.) But Plaintiff offers no persuasive showing that litigation in this forum is any more or less convenient for its foreign witnesses and stewards of evidence than in any other district court in the United States.

At the hearing, Plaintiff offered two arguments on these factors, both of which are unavailing. First, Plaintiff submitted that this district stands between Plaintiff's nerve center in China and Defendant's nerve center in Pennsylvania. Plaintiff effectively asks the Court to retain venue because it is equally inconvenient to both parties. That makes no sense. Second, Plaintiff proffered that its investigation showed that many of the accused products were shipped from China to San Francisco. But San Francisco is not within the Central District of California, *see* 28 U.S.C. § 84(a), (c), the Court's subpoena power does not reach San Francisco, *see* Fed. R. Civ. P. 45(c)(1)(A), and the location where products are initially imported into the United States has little relevance to a patent infringement suit, *see Signal IP*, 2014 U.S. Dist. LEXIS 139357, at *8–9.

The center of gravity of the alleged infringement is in the EDPA. Because most of the witnesses and evidence are likely to be in New York or West Chester, litigation in Pennsylvania is likely to be more economical than in California. These convenience factors weigh sharply in favor of transfer.

4. <u>Public Factors</u>

"The local interest in having localized controversies decided at home" favors transfer. *Decker*, 805 F.2d at 843 (internal quotation marks omitted). "California has little interest in the controversy" because neither party is a California resident. *Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, Nos. CV 19-2362 FMO (GJSx), CV 19-7435 FMO (GJSx), 2020 U.S. Dist. LEXIS 264180, at *21 (C.D. Cal. Feb. 25, 2020). Pennsylvania, on the other hand, has at least a nominal interest in the action. Plaintiff accuses Defendant of "wilful, wanton, and deliberate" infringement. (Compl., Prayer for Relief ¶ 13.) Defendant submits that this allegation "calls into question the reputation of unnamed persons at QVC," who likely reside in the EDPA and "have an interest in defending their reputation where they reside." (Mot. 15.)

Further, transfer would be appropriate in light of "the administrative difficulties flowing from court congestion." *Decker*, 805 F.2d at 843 (internal quotation marks omitted). Although "[t]he relative congestion of the courts in each district is not especially important" in this analysis, *Doe v. Spahn*, No. 21-cv-04007-

LB, 2021 U.S. Dist. LEXIS 243655, at *18 (N.D. Cal. Dec. 21, 2021), the contrast between the two district courts here is stark. According to data collected by the Administrative Office of the United States Courts, 5,986 cases were filed in the EDPA during the 12-month period ending March 31, 2022 (the most recent period for which data have been published), and 13,628 were filed in this district during the same period. *Table C—U.S. District Courts—Civil Federal Judicial Caseload Statistics (March 31, 2022)*, U.S. Courts, https://www.uscourts.gov/statistics/table/c/federal-judicial-caseload-statistics/2022/03/31 (last visited May 5, 2023). Given that the districts have similar numbers of active district judges, this action would be much less likely to suffer from administrative difficulties resulting from docket congestion in the EDPA.

          5.    <u>Disposition</u>

Other factors identified in *Decker* and *Jones* are either neutral or inapplicable to this action. On balance, the convenience and justice factors favor transfer to the EDPA.

## IV. CONCLUSION

Accordingly, Defendant's motion to transfer the case to the United States District Court for the Eastern District of Pennsylvania is granted. The Court directs the Clerk to effect the transfer and close the case pending in this district. In the interest of comity, the Court declines to adjudicate Defendant's motion for judgment on the pleadings in order to give the transferee court the opportunity to resolve the motion.

**IT IS SO ORDERED.**